# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

Stevie Lewis,

     *Plaintiff,*

v.            **Case No.: 3:17-cv-220**
            **Judge Thomas M. Rose**

PNC Bank, N.A.,

     *Defendant.*

_____

## ENTRY AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT, ECF 36, DENYING MOTION FOR SANCTIONS, ECF 37, AND TERMINATING CASE
_____

Pending before the Court are Defendant PNC Bank, N.A.'s Motion for Summary Judgment, ECF 36, and Motion for Rule 11 Sanctions. ECF 37. Because Plaintiff Stevie Lewis's Complaint, ECF 1, is anything but frivolous, Defendant's Motion for Rule 11 Sanctions will be denied. Plaintiff's claim only failing for a lack of damages, Defendant's Motion for Summary judgment will be granted.

**Background**

On April 15, 2004, Plaintiff, then known as Stevie Booher, executed a promissory note with National City Mortgage Company in the original amount of $97,000 with interest at the rate of 5.625% per annum. (Exhibit B, Affidavit of Dorothy J. Thomas). The note was secured by a mortgage executed by Plaintiff and National City on the property located at 2800 Argella Ave., Dayton, Ohio 45140. (Id.) In November 2015, Plaintiff and her husband purchased property located at 1078 Bristol Drive, Vandalia, Ohio 45377. (Exhibit C, Deposition of Stevie Lewis

dated February 21, 2018 at 12:16-25 and 13:1-25).   One month prior, in October 2015, Plaintiff

defaulted on the mortgage loan for the Argella Ave. property. (Ex. B, Thomas Aff. at ¶9).

On April 27, 2016 PNC Bank, N.A. filed a complaint for foreclosure captioned *PNC*

*Bank, N.A. v. Stevie N. Booker*, Montgomery County Court of Common Pleas Case No. 2016 CV

02225.   The foreclosure involved the enforcement by PNC of its note and mortgage on the

property located at 2800 Argella Avenue, Dayton, Ohio 45140.   In the foreclosure PNC

obtained a judgment entry and decree in foreclosure on July 8, 2016.

During the course of the foreclosure Plaintiff retained HER Realtors for the purposes

of negotiating a short sale of the Argella Ave. property. Deposition of Stevie Lewis, ECF 38 at

18, Lines 6-8, Page ID 787.   During all relevant times to the foreclosure HER Realtors had a

working relationship with attorney Carol Herdman of Herdman Law whom Plaintiff believed

was assisting HER with negotiations. Id., at 28, Lines 14-20, Page ID 797.   At no time did

Plaintiff ever speak directly with Carol Herdman to know what exactly she did with HER

Realtors. Id.

On May 19, 2016 HER Realtors submitted a loss mitigation application to PNC, signed

by Plaintiff using her current name, Stevie N. Lewis. Complaint, ECF 1 at ¶ 22, Page ID 4.   The

May 19, 2016 application was re-submitted on July 15, 2016 by HER Realtors. Id. at ¶¶ 26-27,

Page ID 5 Between July 27, 2016 and October 3, 2016 Plaintiff, through HER, submitted

additional documentation on the loan modification to PNC Bank, N.A. Id. at ¶¶ 29-30, Page ID

5.

In the early fall of 2016, Herdman Law sent several Requests for Information to PNC.

See Affidavit of Dorothy Thomas, ECF 36-1 at 9, ¶¶ 18-19, Page ID 588; see also ECF 36-2 and

Deposition of Stevie Lewis, ECF 38 at 42:22-45:22 and 46:17-47:20.   PNC sent the responses to these inquiries to Plaintiff at her Bristol Ave. address. Id.

On January 5, 2017, Plaintiff, through Dann Law, sent three separate requests for information to PNC. See Affidavit of Dorothy Thomas, ECF 36-1 at 7, ¶ 10, Page ID 586; see Exhibit A, ECF 1-1, at 1-4, Page ID 50-54 ("RFI #1"); see Exhibit C, ECF 1-3, 1-4, Page ID 57-60 ("RFI #2"); see Exhibit E, ECF 1-5, 1-3, Page ID 64-66.   By this point in the foreclosure, PNC had obtained default judgment, but the sale was not complete.   These letters sent from Dann Law contained an authorization from Plaintiff with her legal name with a request that responses be sent to counsel.   Nevertheless, PNC claims that it sent a response to RFI #1 and RFI #2 instead to Plaintiff at her Bristol Ave. address on January 13, 2017. See Affidavit of Dorothy Thomas, ECF 36-1 at 7, ¶ 11, Page ID 586.   PNC, through their foreclosure counsel, sent a response to RFI #3 to Plaintiff at her current residence on January 12, 2017. Id. at 7-8, ¶ 12, Page ID 586-87.

On February 3, 2017, the foreclosed property was sold at a sheriff sale.

On February 7, 2017 PNC received correspondence from Dann Law titled Notice of Error. Id. at 8, ¶ 13, Page ID 587; see also Exhibit H, ECF 1-8, 1-8, Page ID 72-79 ("NOE #1"). NOE #1 requested an explanation of why PNC had not responded to RFI #3, as Dann Law had not received a response from PNC and neither had Plaintiff. Id. at 3-4, Page ID 74-75; see also Deposition of Stevie Lewis, ECF 38 at 61, Lines 1-7, Page ID 830.

After receiving NOE #1 from Dann Law containing an authorization from Plaintiff with her legal name, PNC sent a response to NOE #1 to Plaintiff's residence on February 22, 2017. See Affidavit of Dorothy Thomas, ECF 36-1 at 8, ¶ 13, Page ID 587.   On February 16, 2017

PNC received correspondence from Dann Law titled Notice of Error for PNC's purported error in failing to respond to RFI #2. Id. at 8, ¶ 14, Page ID 577; see also Exhibit J, ECF 1-10, at 1-9, Page ID 82-90. ("NOE #2") NOE #2 requested an explanation why PNC had not responded to RFI #2, as Dann Law had not received a response from PNC and neither had Plaintiff. Id. at 1-3, Page ID 83-85.

On March 22, 2017, PNC received correspondence from Dann Law titled Notice of Error for PNC's purported error in failing to respond to RFI #1. See Affidavit of Dorothy Thomas, ECF 36-1 at 8, ¶ 15, Page ID 577; see also Exhibit N, ECF 1-14, 1-9, Page ID 99-107. (NOE #3) NOE #3 requested an explanation why RFI #1 was not responded to as Dann Law had not received a response from PNC and neither had Plaintiff. Id. at 1-4, Page ID 99-102.

On May 31, 2017, PNC received correspondence from Dann Law titled as a Notice of Error for PNC's purported failure to respond to NOE #4. Affidavit of Dorothy Thomas, ECF 36-1 at 8-9, ¶ 16, Page ID 587-588; see also Exhibit N, ECF 1-18, 1-19, Page ID 116-134.   NOE #4 requested an explanation why NOE #3 had not been responded to as Dann Law had not received a response from PNC and neither had Plaintiff. Id. at 1-4, Page ID 116-120.

On June 13, 2017, for the first time since it received RFI #1, RFI #2, RFI #3, NOE #1, NOE #2, and NOE #3 which all contained the exact same borrower authorization as NOE #4, PNC sent Dann Law a response to NOE #4. Affidavit of Dorothy Thomas, ECF 36-1 at 8-9, ¶ 16; see ECF 36-1 at 49-56, Page ID 628-635; compare ECF 1-18, 6, Page ID 121 with ECF 1-1 at 4, Page ID 53; ECF 1-3 at 4, Page ID 60; ECF 1-5 at 3, Page ID 66; and ECF 1-8 at 5, Page ID 76; ECF 1-10 at 5, Page ID 86.

On June 28, 2017 Plaintiff filed the instant action asserting eleven claims against PNC for servicing violations under the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601-2617. After PNC filed a Motion for Judgment on the Pleadings as to Counts One through Five on October 25, 2017 (ECF 18), Plaintiff stipulated to dismissal of Counts One through Five on November 8, 2017. See ECF 20, 21, and 30. Following the dismissal of Counts One through Five, litigation has continued against Defendant for Counts Six through Eleven which allege: Count Six: PNC violated 12 C.F.R. § 1024.36(d) by failing to timely respond to Plaintiff's RFI #1; Count Seven: PNC violated 12 C.F.R. § 1024.36(d) by failing to timely respond to Plaintiff's RFI #2; Count Eight: PNC violated 12 C.F.R. § 1024.36(d) by failing to timely respond to Plaintiff's RFI #3; Count Nine: PNC violated 12 C.F.R. § 1024.35 by failing to timely respond to Plaintiff's NOE #1; Count Ten: PNC violated 12 C.F.R. § 1024.35 by failing to timely respond to Plaintiff's NOE #2; Count Eleven: PNC violated 12 C.F.R. § 1024.35 by failing to timely respond to Plaintiff's NOE #3; see Complaint, ECF 1, at 32-46, Page ID 32-46.

Defendant has now filed a Motion for Summary Judgment, ECF 36, claiming that no triable issues of fact and law remain as to Counts Six through Eleven.

## II.    Standard of Review

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and associated case law. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. at 56(c). Alternatively, summary judgment is denied "[i]f there are any genuine factual

issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions and affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.*, at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S., at 250 (quoting Fed. R. Civ. at 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S., at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S., at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright

& Miller, *Federal Practice and Procedure*, § 2726.   Rather, credibility determinations must be left to the fact-finder. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not…obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties.

## III.    Analysis

Plaintiff Stevie Lewis asserts Defendant PNC Bank, N.A., has violated the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601-2617.   "RESPA is a consumer protection statute that regulates the real estate settlement process, including servicing of loans and assignment of those loans." *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 680 (7th Cir. 2011).

The crux of Counts Six through Eleven against the Defendant are that three Requests for Information were sent to PNC to which PNC failed to respond in a timely fashion in violation of 12 C.F.R. § 1024.36(d) (Counts Six, Seven and Eight); one Notice of Error was sent to the Defendant which PNC failed to properly investigate pursuant to 12 C.F.R. § 1024.35 (Count Nine); one Notice of Error was sent to Defendant which PNC failed to properly investigate pursuant to 12 C.F.R. § 1024.35 (Count Ten); and one Notice of Error was sent to Defendant on which PNC failed to properly investigate pursuant to 12 C.F.R. § 1024.35 (Count Eleven).

### *Rooker-Feldman*

Defendant first asserts that this Court lacks jurisdiction under the *Rooker-Feldman* doctrine.   The *Rooker–Feldman* doctrine, named for *Rooker v. Fidelity Trust Co.*, 263 U.S. 413

(1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), bars two

categories of cases:

> First, when the federal courts are asked to 'engage in appellate
> review of state court proceedings,' the doctrine necessarily applies
> ... In determining whether a plaintiff asks for appellate review, [the
> lower federal courts] look to the relief sought ... or asks the
> question whether the plaintiff alleges 'that the state court's
> judgment actively caused him injury [rather than] merely failing to
> address a preexisting injury....
>
>     The second category of cases barred by *Rooker-Feldman*
> are those which allege an injury that predates a state-court
> determination, but present issues inextricably intertwined with the
> claim asserted in the prior state court proceeding.... 'The federal
> claim is inextricably intertwined with the state-court judgment
> when the federal claim succeeds only to the extent that the state
> court wrongly decided the issues before it....'

*DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004) (citations omitted).  Where a federal

complaint raises claims independent of, but in tension with, a state court judgment, the *Rooker-*

*Feldman* doctrine "is not an impediment to the exercise of federal jurisdiction" simply because

"the same or a related question was earlier aired between the parties in state court," and any

tension created by the concurrent federal and state proceedings "should be managed through the

doctrines of preclusion, comity, and abstention." *Thana v. Bd. of License Comm'rs for Charles*

*Cty., Md.*, 827 F.3d 314, 320 (4th Cir. 2016) (internal quotation marks omitted).

    While "the mere fact that a ruling favorable to [a] federal plaintiff may call into question

the correctness of a state court judgment has no bearing on the federal court's jurisdiction over

the plaintiff's claims under *Rooker-Feldman*," *Vicks v. Ocwen Loan Servicing, LLC*, 676 F.

App'x 167, 169 (4th Cir. 2017)(citation omitted), here, *Rooker-Feldman* is inapposite, as the

question of whether Plaintiff's property was subject to foreclosure is not related to whether

Defendant properly serviced Plaintiff's loan under RESPA.   Protesting the servicing of the loan

is not an appeal of the foreclosure, nor are the two questions inextricably intertwined.

**Applicability of RESPA to Defendant**

Next, Defendant claims that, because a foreclosure judgment had already been obtained

before it received the RESPA notices from Plaintiff, it is not subject to RESPA. It is:

> Other courts have found that the language of RESPA and
> Regulation X contemplates post-judgment responsibilities of
> servicers. See *Loconsole v. Wells Fargo Mortgage*, 2018 WL
> 3158816 at *5-6 (D.N.J. June 28, 2018); *Mannarino v. Ocwen
> Loan Serv., LLC*, 2018 WL 1526558, at *4-5 (D.N.J. Mar. 28,
> 2018).   Specifically, both courts cite to 12 C.F.R. § 1024.41(g),
> which states that under certain circumstances "a servicer shall not
> move for foreclosure judgment or order of sale, or conduct a
> foreclosure sale ...".   On this basis...courts found that RESPA does
> apply to post-judgment, pre-sale claims. See *Loconsole v. Wells
> Fargo Mortgage*, 2018 WL 3158816, at *6 (RESPA's loss
> mitigation procedures apply after entry of final judgment of
> foreclosure but before foreclosure sale); *Mannarino v. Ocwen
> Loan Serv., LLC*, 2018 WL 1526558, at *5 (regulations suggest
> servicer has [an] obligation to Plaintiff until judicial sale [is]
> completed; defendant's 'merger' theory lacks merit).

> This Court agrees with the analysis in *Mannarino* and
> *Loconsole*. As noted, adopting Wells Fargo's position that
> "servicing" under RESPA ceases post foreclosure judgment, and
> therefore there can be no "servicer" after that event would have the
> effect of making several regulations superfluous.   In addition to §
> 1024.41(g), 12 C.F.R. § 1024.35(b)(10) lists "moving for
> foreclosure judgment or order of sale, or conducting a foreclosure
> sale in violation of § 1024.41(g) or (j)" as a covered notice of error
> requiring a response from the servicer.   A foreclosure sale cannot
> occur absent a final judgment in foreclosure being entered.   If the
> definition of "servicer" only extends to the date of the final
> judgment, as Wells Fargo submits, then there would be no need to
> enact any regulations related to foreclosure sales. It would be
> illogical to allow for a scenario where a borrower submits a notice
> of error regarding a foreclosure sale under the plain, unambiguous
> language of § 1024.35(b)(10), which explicitly contemplates and
> allows for such a request, only to find that there is no "servicer"

> who would be required to comply under RESPA. Because
> foreclosure sales are referenced, the only reasonable reading of the
> regulations is that a party must still be considered a "servicer" up
> to at least that point, despite the entry of a final judgment in
> foreclosure.

*In re Rosa*, No. 17-27826 (CMG), 2018 WL 4352168, at *4–5 (Bankr. D.N.J. Aug. 9,

2018). This Court also agrees. Defendant is subject to RESPA at least until the foreclosure

sale.

## Is Defendant a Servicer

Next, Defendant asserts PNC is not subject to RESPA because it is not a "servicer" of the

loan. PNC reasons it was no longer servicing the property after the judgment of foreclosure was

entered by the state court on July 9, 2016.

As noted above, the "position that 'servicing' under RESPA ceases post foreclosure

judgment, and [that] therefore there can be no 'servicer' after that event would have the effect of

making several regulations superfluous. ... If the definition of 'servicer' only extends to the date

of the final judgment,..., then there would be no need to enact any regulations related to

foreclosure sales. Because foreclosure sales are referenced, the only reasonable reading of the

regulations is that a party must still be considered a 'servicer' up to at least that point, despite the

entry of a final judgment in foreclosure." *In re Rosa*, No. 17-27826 (CMG), 2018 WL 4352168,

at *4–5 (Bankr. D.N.J. Aug. 9, 2018).

## RESPA Violation

Finally, Defendant asserts its actions did not violate RESPA. It reasons 12 CFR §

1024.35(d) requires a servicer who receives a notice of error to acknowledge receipt of the notice

of error within five days and to provide the requested information by a certain date. *Genid v.*

*Fannie Mae*, 2016 U.S. Dist. LEXIS 100896 at * 7-8. There are similar, though slightly different, requirements for Requests for Information. Id.

PNC asserts it responded directly to Plaintiff because its records did not reflect that the Dann Law Firm was authorized to receive information regarding Plaintiff's mortgage loan and account and because the name on the authorization reflected a different name than in PNC's system. (Id. at ¶ 11 (Exhibit 4 to Thomas Aff.)). PNC sent responses to Requests for Information 1 and 2 in correspondence dated January 13, 2017. (Id.). The law firm, Laurito & Laurito, LLC, PNC's foreclosure counsel, responded to Request for Information 3 in a letter dated January 12, 2017. (Exhibit F, Affiavit of Joshua J. Epling, sworn to on May 31, 2018 at ¶ 4). Both responses to the Requests for Information were sent to Plaintiff at the Bristol Dr. Property address. (Exhibit B, Thomas Aff. at ¶ 11; Exhibit F, Epling Aff. at ¶ 4). PNC received the correspondence identified as a Notice of Error dated February 7, 2017. PNC sent the February 22, 2017 response to Plaintiff at the Bristol Dr. Property.

RESPA's implementing regulations at 12 C.F.R. § 1024.36(d)(1)(i) provide that "except as provided in paragraphs (e) and (f) of this section, a servicer must respond to a request for information by...providing the borrower with the requested information and contact information, including a telephone number, for assistance in writing." While 12 C.F.R. § 1024.36(d)(1)(i) does not define what "providing the borrower" means, the Mortgage for the Property does. Paragraph (O) of the Mortgage incorporated RESPA into the Mortgage Loan between Plaintiff and Defendant. See Exhibit B-2, ECF 36-1 at 21, Page ID 601. Paragraph 15 of the Mortgage provides for the sending of Notices by the Lender to the Borrower:

> "All notices given by the Borrower or lender in connection
> in this Security Instrument must be in writing. Any notice to

> Borrower in connection with this security instrument shall be
> deemed to have been given to Borrower when mailed by first class
> mail or when actually delivered to Borrower's notice address if
> sent by other means...The notice address shall be the Property
> Address unless Borrower has designated a substitute notice address
> by Notice to Lender....There may be only one designated Notice
> address under this Security Instrument at any one time....If any
> notice required by this Security Instrument is also required under
> Applicable Law, the Applicable Law requirement will satisfy the
> correspondence requirement under this Security Instrument."

ECF 36-1, at 29, Page ID 608.   While Plaintiff requested that notices be sent to her attorney, the

January 12, 2017 letter, the January 13, 2017 letter, the February 22, 2017 and the March 29,

2017 letter by the Affiant of the Defendant's own admissions were each sent to the Plaintiff at

her current Bristol Ave. address, which is not the Argella Ave. Property Address.

      Use of legally designated addresses is essential to fulfilling RESPA duties. See *Best v.*

*Ocwen Loan Servicing, LLC*, No. 16-1217, 2016 WL 10592245, at *2 (6th Cir. Nov. 29, 2016)

("a servicer may designate an exclusive address for the receipt of QWRs. *See* 12 C.F.R. §§

1024.35(c) and 1024.36(b).   A servicer is not obligated to respond to QWRs sent to an address

other than the designated QWR address. *Berneike*, 708 F.3d at 1149; *Roth*, 756 F.3d at 181-

82.").   PNC, by its own admission, did not fulfill its RESPA duties.

**Damages**

      Defendant's final contention is that Plaintiff has no recoverable actual damages for

Counts Six through Eleven.   Plaintiff is seeking (1) actual damages in excess of $42,023.36,

costs, and reasonable attorneys' fees and (2) statutory damages of "*no less than*" $2,000.00 for

each violation of Regulation X of RESPA. ECF 1 at 48, Page ID 48 (emphasis added).

      RESPA makes violators liable to individual borrowers for "(A) any actual damages to the

borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the

case of a pattern or practice of noncompliance with the requirements of this section, in an amount *not to exceed $2,000*." 12 U.S.C. § 2605(f)(1) (emphasis added).

Recovery under RESPA requires more than establishing a violation; a plaintiff also must suffer actual, demonstrable damages that occurred "as a result of" that specific violation. See *Tsakanikas v. JP Morgan Chase Bank N.A.*, No. 2:11-CV-888, 2012 WL 6042836, at *4 (S.D. Ohio Dec. 4, 2012); see also *Eichholz v. Wells Fargo Bank, NA*, No. 10–cv–13622, 2011 WL 5375375, at *5 (E.D. Mich. Nov.7, 2011) (quoting 12 U.S.C. § 2605(f)(1)(A)); accord *Webb v. Chase Manhattan Mortg. Corp.*, No. 2:05–CV–0548, 2008 WL 2230696, at *14 (S.D. Ohio May 28, 2008).

Initially, the Court notes that the statute caps statutory damages for a pattern and practice of violations at $2,000. Next, Plaintiff concedes she is not entitled to receive any actual damages related to the foreclosure action itself. Plaintiff, by dismissing Counts One through Five, which alleged violations that occurred during the foreclosure, explicitly denied those claims. According to Plaintiff, Counts Six through Eleven show violations for which Plaintiff is seeking relief that "all occurred after the Order for Sheriff Sale occurred and are separately actionable." ECF 42, PageID 1195. "Counts Six through Eleven arise out of a complete separate occurrence than the merits of the foreclosure: the failure to properly service the mortgage. The claims have no direct effect on the ownership of the real property." ECF 42, PageID 1196. Unfortunately for Plaintiff, as discussed above, after the sheriff sale Defendant was no longer servicing the loan.

Additionally, Plaintiff asserts that due to the Defendant's actions, Plaintiff has been forced to incur expenses and damages by having "to hire counsel to send Requests for

Information and Notices of Error under RESPA in an attempt to discover what went awry in the

application process and to attempt to amicably resolve any errors." ECF 1, PageID 12, ¶ 72.

This Court joins the chorus rejecting damages based upon seeking to initially assert

RESPA rights, prior to any possible violation of RESPA:

> "the costs incurred while preparing a qualified written request for
> information from a servicer cannot serve as a basis for damages
> because, at the time those expenses are incurred, there has been no
> RESPA violation."[*Zaychick v. Bank of Am., N.A.*, No. 9:15-CV-
> 80336, 2015 WL 4538813 (S.D. Fla. July 27, 2015)], (citing *Steele
> v. Quantum Serv. Corp.*, 12–CV–2897, 2013 WL 3196544 (N.D.
> Tex. June 25, 2013)).  To hold otherwise would negate the element
> of actual damages entirely, for "every RESPA claim [would have]
> damages built-in to the claim." *Id.* (citing *Lal v. Amer. Home Serv.,
> Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010)); cf. *Burdick v.
> Bank of Am.*, No. 14–62137–CIV, 140 F. Supp. 3d 1325, 1331-32,
> 2015 WL 4555239, at *5 (S.D. Fla. July 28, 2015) (citing *Cezair v.
> JPMorgan Chase Bank, N.A.*, No. DKC 13–2928, 2014 WL
> 4295048, at *8 (D. Maryland Aug. 29, 2014)) (finding costs of
> post-violation communications recoverable under RESPA).  The
> costs of sending the correspondence prior to the alleged RESPA
> violation may not serve as evidence of actual damages. See 12
> U.S.C. § 2605(f)(1)(A) (allowing for recovery of "any actual
> damages to the borrower as a result of" the violation).  As the
> record is devoid of damages bearing a causal relationship to
> Ocwen's purported failure to comply with 12 C.F.R. § 1024.35, an
> essential element of Plaintiffs' claim is lacking and no genuine
> issue of material fact exists.

*Lage v. Ocwen Loan Servicing LLC*, 145 F. Supp. 3d 1172, 1197 (S.D. Fla. 2015), aff'd, 839

F.3d 1003 (11th Cir. 2016).

This leaves Plaintiff's last basis for damages as statutory damages if Defendant engaged

in a pattern or practice of violations, which pattern Plaintiff would have the Court find in the

instances contained in this case.  That is insufficient:

The phrase "pattern or practice" appears in many federal statutes, and "the words reflect only their usual meaning." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 n.16 (1977). To show a pattern or practice, a plaintiff must show that noncompliance with the statute "was the company's standard operating procedure—the regular rather than the unusual practice." *Id.* at 336; *see Renfroe*, 822 F.3d at 1247 (discussing the meaning of "pattern or practice" in RESPA). Conduct that does not amount to a violation of RESPA may not be considered, because the statute requires "a pattern or practice of noncompliance with the requirements of this section." § 2605(f)(1)(B).

[Plaintiff] did not produce evidence to support a finding of "pattern or practice" here. There was no evidence that [Defendant] failed to investigate and respond reasonably to qualified written requests from other borrowers. See *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d at 523.

*Wirtz v. Specialized Loan Servicing, LLC*, 886 F.3d 713, 720 (8th Cir. 2018). A plaintiff must allege some RESPA violations "with respect to other borrowers." *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 523 (10th Cir. 2013).

Indeed, even if Plaintiff could show a pattern or practice involving other borrowers, that would only get the Court to the point of determining if pattern-or-practice damages can stand alone without actual damages. See *Kantz v. Bank of Am., N.A*, No. 3:17-CV-00051, 2018 WL 1948164, at *6 (M.D. Tenn. Apr. 25, 2018)("Nor has Plaintiff demonstrated entitlement to statutory damages for "a pattern or practice of noncompliance" under subsection 2605(f)(1)(B). In order to recover statutory damages for a pattern or practice of noncompliance, a borrower must first recover actual damages.").

**Motion for Sanctions**

What remains, then, is resolution of Defendant's Motion for Sanctions. ECF 37. Therein, Defendant asserts that Plaintiff is subject to sanctions, essentially because Defendant's

Motion for Summary Judgment is really, really, right. Defendant's motion failed at every step, but the last, and even there it did so amidst undeveloped case law that could have potentially lead to a different result in a just slightly different circumstance.

The Court reminds Defendant's counsel that a frivolous motion for sanctions is, in itself, sanctionable. See *Alliance to End Repression v. City of Chicago*, 899 F.2d 582, 583 (7th Cir. 1990) ("Hair-trigger motions for sanctions by lawyers who do not recognize [the difference between vigorous advocacy and frivolous conduct] are themselves sanctionable"). The motion for sanctions is denied.

**Conclusion**

Because Plaintiff suffered no damages and has no evidence of a pattern or practice of RESPA violations, Defendant PNC Bank, N.A.'s Motion for Summary Judgment, ECF 36, is **GRANTED**. Defendant's Motion for Rule 11 Sanctions, ECF 37, is **DENIED**. The Clerk is **ORDERED** to enter judgment in favor of Defendant and against Plaintiff. The instant case is **TERMINATED** from the dockets of the United States District Court, Southern District of Ohio, Western Division at Dayton

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, November 29, 2018.


s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE